UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HUA LIU BAO,

Petitioner,

-vs-

LORETTA LYNCH, Attorney General of the United States of America, et al.,

Respondents.

DECISION AND ORDER

16-CV-6724 (CJS)

INTRODUCTION

Hua Liu Bao ("Bao" or "Petitioner"), a citizen of the Peoples Republic of China ("China"), is subject to a final order of removal, as an alien who entered the United States without inspection. Bao, who is not appealing such order or opposing his removal in any way, has been in the custody of the Department of Homeland Security ("DHS") for almost one year, while waiting for DHS to obtain the travel documents required to remove him to China. In this action filed pursuant to 28 U.S.C. § 2241, Bao argues, *inter alia*, that his continued detention in Respondents' custody is unreasonable and unlawful, based, *inter alia*, on the Supreme Court's decision in *Zadvydas v. I.N .S.*, 533 U.S. 678, 121 S.Ct. 2491 (2001) ("*Zadvydas*"). The Court disagrees, and denies the application for writ of habeas corpus.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Bao's petition and Respondent's Answer and Return, and are not disputed. Bao, born in 1962, is a native and citizen of China, who entered the United States illegally in 1995. On October 26, 1995, Petitioner applied for asylum in the United States. On January 9, 1996, the United States denied the application for asylum. On January 23, 1996, the United States served Bao

with an order to show cause, charging him, under former INA § 241(a)(1)(B), as being an alien who entered the United States without inspection. On June 19, 1996, an Immigration Judge granted Bao's application for voluntary departure in lieu of removal, and directed Bao to voluntarily depart from the United States by March 19, 1997. However, Bao remained in the United States. On April 5, 1999, Bao filed a motion to re-open his removal proceeding, but on April 20, 1999, the Immigration Judge denied the application. Bao appealed, but on May 23, 2002, the Board of Immigration Appeals ("BIA") dismissed the appeal. Bao filed a motion for reconsideration, which the BIA denied.

Nevertheless, Bao remained in the United States. In that regard, it appears that because the Department of Homeland Security ("DHS") did not remove Bao within a certain time, on January 7, 2010, it released him on an Order of Supervision.[1] Bao remained free pursuant to such order until 2014, when he was arrested and charged with various crimes including criminal possession of a forged instrument. In 2015, Bao was convicted, in New York State, Albany County Court, of Criminal Possession of a Forged Instrument in the Second Degree, a Class D felony, for which he served a sentence in the Albany County Jail.[2]

On April 13, 2016, upon his release from jail, Bao was taken into custody by DHS, where he remains to this day. On April 21, 2016, DHS sent a "presentation packet" to the Chinese Consulate, requesting a travel document for Bao. The request as supported by various documentation of Bao's identity, including copies of Bao's birth certificate and passport.

In July 2016, DHS reviewed Bao's custody status and continued his detention. In

---

[1] *See*, Docket No. [#4-2] at p. 6.

[2] Apparently the crime involved Bao's use of an electronic device to steal credit card information. http://www.timesunion.com/local/article/Arrest-made-in-ID-theft-probe-5233086.php http://www.timesunion.com/local/article/Man-gets-2-years-for-credit-card-skimming-6481472.php

that regard, on July 12, 2016, DHS issued Bao a "Decision to Continue Detention," which reviewed the history of Bao's case, including his failure to voluntarily depart and his subsequent criminal conviction, and noted that there was only "minimal evidence" of Bao's community ties and "no evidence" of non-governmental sponsors or employment prospects in the U.S.. DHS concluded that, "[g]iven [Bao's] past criminal activity and the absence of a strong support network," he might be a danger to the community and a flight risk.[3] The decision further indicated that if Bao remained in custody past October 10, 2016, jurisdiction for his custody review would be transferred to the Headquarters Post-order Custody Review Unit ("HQPOCRU").

HQPOCRU subsequently conducted a review of Bao's detention, that included a personal interview of Bao at the Buffalo Federal Detention Facility, and an opportunity for Bao to submit information for consideration.[4] On October 26, 2016, HQPOCRU issued a "Decision to Continue Detention," noting that Bao had entered the United States without permission and then failed to voluntarily depart as ordered. The decision further stated, in pertinent part: "[DHS] is currently working with the government of China to secure a travel document for your removal from the United States. A travel document from the Government of China is expected; therefore you are to remain in [DHS] custody at this time."[5]

In January 2017, HQPOCRU conducted another review of Bao's detention, and on January 24, 2017, HQPOCRU issued a "Decision to Continue Detention," which noted that Bao had entered the United States without permission, failed to voluntarily depart, and then

---

[3]Docket No. [#4-2] at p. 4.

[4]*See*, Docket No. [#4-2] at p. 2.

[5]Docket No. [#4-2] at p. 2.

been convicted of a felony.[6] The decision reiterated that DHS was working to obtain a travel document and expected that such document would be provided by China.

Bao has no appeals pending, and there is no impediment to his removal to China, other than China's willingness to provide a travel document.

On November 4, 2016, Bao, proceeding *pro se*, filed the subject petition [#1], which purports to assert five separate claims: 1) "constitutional framework" (He contends that he is not dangerous, is not a flight risk, and cannot be removed, therefore his continued detention violates "substantive and federal due process"); 2) "procedural due process violation" (He contends that his "continued indefinite detention without a hearing" violates his right to procedural due process); 3) "substantive due process violation" (He contends that his detention violates substantive due process because he is neither a flight risk nor a danger to the community); 4) "detention in violation of the statute and regulations" (He contends that his continued detention violates 8 U.S.C. § 1231); and 5) "abuse of discretion" (He contends that on July 12, 2016, the Government conducted a "90-day custody review," and decided to keep him in custody "without rational justification and based on a legally insufficient standard.").

The Court observes that several of these claims are duplicative. In particular, claims one-through-three are really just variations of a single claim, namely, that Bao's continued detention beyond six months violates his right to procedural due process and substantive due process.[7] Similarly, claims four and five both allege that Respondents violated 8 U.S.C. § 1231 by failing "to conduct a thorough review of Bao's eligibility for release/parole after 90 days . . . or 180 days," and instead issue "rubberstamp denials" that were "without

---

[6]Docket No. [#12-1] at p. 1.

[7]Although claim two refers to Bao being held without a hearing, the petition later admits that he has had a hearing. *See*, Claim 5.

rational justification and based on a legally insufficient standard." Accordingly, the five claims in the petition really boil down to just two claims: 1) Bao's continued detention, beyond six months, when there is no likelihood that he will be removed to China, violates his federal procedural- and substantive-due process rights; and 2) Respondents violated 8 U.S.C. § 1231 by failing "to conduct a thorough review of Bao's eligibility for release/parole after 90 days . . . or 180 days" and by failing to apply the proper standards.

On December 22, 2016, Respondents filed an Answer and Return [#4] to the Petition and a Memorandum of Law [#5]. The Memorandum of Law [#5] includes the following points: 1) Bao's continued detention is lawful under 8 U.S.C. § 1231(a) and *Zadvydas*, since he has not shown that his removal is unlikely to occur in the reasonably foreseeable future; 2) DHS has been in "active and regular communication" with China regarding the request for travel documents; 3) China is in the process of verifying Bao's identity, which "generally takes a number of months,"[8] and will not issue a travel document until such investigation is completed; 4) China has not indicated that it is unwilling to accept Bao; and 5) DHS has reviewed Bao's detention as required by the pertinent statute and regulation (8 U.S.C. § 1231(a)(6) & 8 C.F.R. § 241.4) and has afforded Bao the due process to which he is entitled. Respondents maintains that the Court should dismiss the petition.

Regarding DHS's communications with China, the record indicates that in addition to DHS's initial request for a travel document in April 2016, it has contacted the Chinese Consulate about the matter on sixteen (16) occasions.[9] Apparently, most of these communications were by email. In response, DHS has received two emailed responses from the Chinese Consulate; first, on October 14, 2016, DHS received an email indicating

---

[8]Respondent's Memo of Law [#5] at p. 11.

[9]*See* Docket No. [#4] at p. 6 and Docket No. [#12] at p. 3

that the request for a travel document was "pending", and second, on February 16, 2017, DHS received an email indicating that the request was "under review."[10]

DHS further indicates that China "has regularly issued travel documents for its citizens who have been ordered removed from the United States."[11] On that point, the Court notes that according to DHS's "Yearbook of Immigration Statistics," https://www.dhs.gov/immigration-statistics/yearbook/2015, table 41, China has recently accepted the following numbers of aliens from the United States: 2015 (634 total, of which 117 were criminals); 2014 (659 total, of which 137 were criminals); 2013 (788 total, of which 171 were criminal) and 2012 (1039, of which 208 were criminals).

On January 17, 2017, Bao, who is now represented by an attorney, filed a memorandum of law [#8] in response to the Answer and Return. Bao disputes that the communications between DHS and China suggest that his removal is likely to occur in the reasonably foreseeable future. Bao also cites a number of district-court decisions from jurisdictions outside of the Second Circuit which, he maintains, support his contention that he has made a sufficient showing as required by *Zadvydas*.[12] Bao admits that there is no institutional barrier to the removal of Chinese citizens to China generally, but contends that his situation is different, because he was convicted of a crime in the U.S.A.. (Although, as already mentioned, DHS records show that China accepts criminal aliens)

---

[10]Docket No. [#12] at p. 3.

[11]Docket No. [#5] at p. 3.

[12]*See*, Pet. Memo of Law [#8] at pp. 4-5. The cases cited by Bao are not binding on this Court or particularly persuasive. To begin with, none of the cases involved China. Beyond that, *Khader v. Holder*, 843 F.Supp.2d 1202 (N.D. Alabama, Middle Division, 2011) is factually dissimilar, due to peculiarities of Jordanian law, and the petitioner therein was ultimately dismissed as moot; *Butt v. Holder*, 2009 WL 1035354 (S.D. Alabama, Northern Division Mar. 19, 2009) is a report and recommendation that was ultimately rejected in part and dismissed as moot, and is factually dissimilar insofar as it involves a peculiarity of Pakistan law; *Nma v. Ridge*, 286 F.Supp.2d 469 (E.D.Pa 2003) actually supports Respondents, not Petitioner; and *Mohamed v. Ashcroft*, 2002 WL 32620339 (W.D.Wa. 2002), *Hajbeh v. Loiselle*, 490 F.Supp.2d 689 (E.D.Va. 2007) and *Andreasyan v. Gonzales*, 446 F.Supp.2d 1186 (W.D.Wa. 2006) are too factually dissimilar to be helpful.

Further, Bao contends that under *Zadvydas*, he is not required to show that his removal is "impossible," but merely that it is not reasonably foreseeable, which he claims to have done. Bao asserts, though, that Respondents have not met their burden of rebutting his showing. On this point, Bao states:

> Petitioner Bao has met his burden through the facts readily available in Respondent's Answer and submitted documents. Specifically, that the presumptively reasonable period of 6 months has elapsed, and that there has been little to no communication *from* the People's Republic of China regarding the issuance of travel documents for Petitioner Bao. [For the Government t]o provide that aliens in the past have repatriated to China, without indicating whether those aliens were criminal aliens, and how long the process took, is wholly insufficient to rebut the Petitioner's claim that it is not reasonably likely that he be removed in the foreseeable future.
>
> ***
>
> [A]fter eleven (11) requests to [the Chinese] Consulate, there is absolutely no evidence of a *response* from the People's Republic of China. Surely the fact that so many contacts[,] or more likely attempts at contact[,] were made, shows that very little response was given. The only representation that has been made is that the request for travel documents remains pending. This representation is completely uncorroborated by any documentation or additional evidence, and is so vague and conclusory, that it may simply represent Deportation Officer Krygier's personal opinion.

Petitioner's Memo [#8] at pp. 6-7 (emphasis in original).

On March 7, 2017, the Court heard oral argument on the Petition by telephone, with Bao's counsel participating from New York City, and Respondents' counsel participating from Buffalo. At that time, Respondents' counsel indicated that DHS has had additional recent contacts with the Chinese Consulate regarding the request for travel documents, that are not included in the submissions. Accordingly, the Court directed Respondents to submit a supplemental affidavit. On March 10, 2017, Respondents filed a supplemental affidavit [#12] from Juanita Payan ("Payan"), a Deportation Officer employed by DHS which

shows, as already discussed above, that DHS "had contact" with the Chinese consulate on December 6, 2016, December 7, 2016, January 4, 2017, January 17, 2017, January 25, 2017, February 15, 2017 and February 16, 2017, and received responses from a "Z. Yang" that the request for travel documents for Petitioner was "pending" and "under review."

DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241 (8 U.S.C. § 1231), which authorizes detention of aliens after the issuance of a final removal order.

Bao is confined under the latter statute, which provides authority to detain an alien once the decision on removal is made, and the removal order becomes final. In that regard, INA § 241(a) requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens—like petitioner—who have been determined to be a threat to the community or a risk of flight, beyond the expiration of the ninety-day removal period. *See*, INA § 241(a)(6).[13]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts ...." *Id*. at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

---

[13] *See*, 8 U.S.C.A. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).").

*Id*.

In the instant case, Bao is not entitled to habeas relief because he has not shown that there is no significant likelihood of his removal to China in the reasonably foreseeable future. To the contrary, the record indicates, first, that there is no institutional barrier to Bao's removal, since China accepts a significant number of aliens, including criminal aliens, from the United States each year. Additionally, the record indicates that DHS has provided the Chinese Consulate with documentary evidence concerning Bao's identity, including a birth certificate and passport, which should facilitate China's ability to confirm Bao's identify. Moreover, in this case the mere passage of time does not indicate that China is unwilling to issue a travel document; rather, DHS maintains, and Bao does not dispute, that in general, the process of obtaining a travel document from China can be lengthy.[14] Additionally, the communications from China, while sparse, indicate that the process is proceeding.

In sum, Bao has not met his initial burden under *Zadvyas*. However, even assuming, *arguendo*, that Bao has met his initial burden under *Zadvydas*, the Court nevertheless finds that Respondents have met their burden on rebuttal. In short, the evidence does not establish that there is no significant likelihood of removal in the reasonably foreseeable future. Instead, the record indicates that China is presently attempting to verify Bao's citizenship. If it subsequently appears that Bao's removal is no longer reasonably foreseeable, he may file another petition.

As for the remaining aspects of Bao's petition, it is notable that Bao's attorney-drafted response [#8] to the Answer and Return does not reiterate the claims, set forth in

---

[14] *See*, Docket No. [#4-1] at ¶ 22 ("Generally, it takes a number of months for the People's Republic of China to complete its lengthy investigation process before a travel document is issued. The length of the investigation depends on a number of variables, such as what identification documents are readily available and whether an alien has family remaining in China.").

the original *pro se* petition and disputed by DHS, that DHS denied Bao the proper custody review procedures. Rather, Bao's response [#8] sticks to the issue of the parties' respective burdens under *Zadvydas*. In any event, the record disproves Bao's contention that DHS denied him the appropriate reviews, or that DHS failed to provide good reasons for its decisions.

CONCLUSION

Bao's petition is denied. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated: Rochester, New York
March 29, 2017

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge